```
UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re:                                                      :
                                                            :   Chapter 11
OLD CARCO LLC, et al.,                                      :
                                                            :   Case No. 09-50002 (SMB)
                                Debtors.                    :
------------------------------------------------------------X
                                                            :
LYNN GRIMSTAD, et al.,                                      :
                                                            :
                                Plaintiffs,                 :
                                                            :   Adv. Pro. No. 16-01204 (SMB)
        – against –                                         :
                                                            :
FCA US LLC, et al.,                                         :
                                                            :
                                Defendants.                 :
------------------------------------------------------------X
```

## MEMORANDUM DECISION GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS FIRST AMENDED COMPLAINT

**A P P E A R A N C E S:**

A.O.E. LAW & ASSOCIATES
Attorneys for Plaintiffs
350 S. Figueroa St., Suite 189
Los Angeles, CA 90071

    Sedoo A. Manu, Esq.
        Of C0unsel

SULLIVAN & CROMWELL LLP
Attorneys for Defendant FCA US LLC
125 Broad Street
New York, NY 10004

    Benjamin Robert Walker, Esq.
        Of Counsel

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

The Plaintiffs own vehicles that were manufactured and sold by the debtors, collectively Old Carco LLC ("Old Carco"). After the Defendant FCA US LLC ("New Chrysler") purchased Old Carco's assets and continued its operations, New Chrysler recalled the vehicles, attempted to fix a pre-existing glitch, but according to the Plaintiffs, made the situation worse.[1] The Plaintiffs sued, and following the transfer of the lawsuit to this Court, New Chrysler moved to dismiss the Plaintiffs' complaint arguing that their claims were barred by the sale order discussed below. (*FCA US LLC's Motion to Dismiss Plaintiff's First Amended Complaint*, dated Nov. 18, 2016 (the "*Motion*") (ECF Doc. # 12).) For the reasons that follow, the *Motion* is granted in part and denied in part.

## BACKGROUND[2]

On April 30, 2009, Old Carco filed chapter 11 petitions in this Court. Around the same time, Old Carco and New Carco Acquisition LLC, later renamed FCA US LLC (*i.e.,* New Chrysler), entered into a Master Transaction Agreement, dated Apr. 30, 2009 (the "MTA") (ECF Main/Case Doc. # 3232-1), pursuant to which Old Carco agreed to sell substantially all of their assets free and clear of all liens, claims, interests and encumbrances (other than those expressly assumed) to New Chrysler (the "Sale"). The Court approved the Sale on June 1, 2009, (*see Order (I) Authorizing the Sale of*

---

[1] A copy of the *First Amended Class Action Complaint,* dated Mar. 30, 2016 ("*FAC*") (ECF Doc. # 1-3) is attached as Exhibit A to the *Notice of Removal*, dated Apr. 22, 2016 ("*Notice of Removal*") (ECF Doc. # 1-2).

[2] "ECF Doc. # ___" refers to documents filed on the electronic docket in this adversary proceeding, while "ECF/Main Case Doc. # ___" refers to documents filed on the electronic docket in the main bankruptcy case, 09-50002 (SMB).

*Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Interests and Encumbrances, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases In Connection Therewith and Related Procedures and (III) Granting Related Relief*, dated June 1, 2009 (the "*Sale Order*") (ECF/Main Case Doc. # 3232)), and the transaction closed on June 10, 2009.

After the Sale, and on or before July 2013, New Chrysler discovered a defect in certain Jeep vehicles with model years 2005 through 2010 (the "Vehicles").[3]  (*FAC* at ¶¶ 3, 20.)  The defect related to the Final Drive Control Modules ("FDCM")[4] installed in the Vehicles by Old Carco, causing the Vehicles to shift into neutral unexpectedly and without any driver input.  (*FAC*, Ex. 2 ("*Recall Notice*").)  As a result, New Chrysler conducted a recall, (the "N23 Recall"), and issued the *Recall Notice* to the Vehicle owners.  (*FAC* at ¶¶ 20, 24; *see also Recall Notice* & Ex. 3 (*Customer Satisfaction Notification P73*).)  The *Recall Notice* characterized the defect as an FDCM software malfunction that caused the Vehicle to shift into neutral without driver input and could cause the Vehicle to roll away while parked resulting in a crash.  It stated that "Chrysler will repair your vehicle free of charge (parts and labor).  To do this, your dealer will reprogram the Final Drive Control Module."

---

[3]    The parties do not dispute that the Vehicles were manufactured by Old Carco and not by New Chrysler.

[4]    The FDCM is a self-contained computing instrument consisting of, among other things, a circuit board.  (*FAC* at ¶¶ 22, 28.)  According to New Chrysler, the purpose of the FDCM feature is to shut down a Vehicle's four wheel drive capabilities if the FDCM detects an errant electrical signal.  (*FCA UC LLC's Memorandum of Law in Support of Its Motion to Dismiss Plaintiff's First Amended Complaint*, dated Nov. 18, 2016 ("*FCA Brief*"), at 8 (ECF Doc. # 12-2).)

**A.     This Action**

On April 1, 2016, the Plaintiffs filed a class action complaint against New Chrysler in the Superior Court of California, County of Orange on behalf of "[a]ll persons in the United States who purchased, own, or sold at a loss, WK Model Vehicles, which have been reprogrammed by [New Chrysler's] N23 Recall."[5]  (*FAC* at ¶ 47.)  They contend, in substance, that the software update installed by New Chrysler in connection with the N23 Recall caused the "Service 4WD" light to illuminate and disabled certain four wheel drive capabilities.  (*FAC* at ¶¶ 20-38.)  The Plaintiffs allege that the Vehicles were manufactured with defect-prone FDCM hardware, (*FAC* at ¶¶ 21-22), and that New Chrysler issued recall notices to Vehicle owners and performed software updates that disabled certain functions of the Plaintiffs' vehicles.  (*FAC* at ¶¶ 24-27.)  According to the Plaintiffs, the proper course of action would have been to replace the FDCM hardware entirely.  (*FAC* at ¶ 25.)  The *FAC* asserts eleven counts, two of which have since been dismissed by the Plaintiffs.[6]  The table below lists the remaining claims:

| Count | Claim | Underlying Assertions |
|---|---|---|
| I | Trespass to Chattel | New Chrysler disabled certain features of the Plaintiffs' vehicles without their consent through the N23 Recall.  (*FAC* at ¶¶ 70-90.) |
| II | Conversion | New Chrysler disabled certain features of the Plaintiffs' vehicles without consent through the N23 Recall.  (*FAC* at ¶¶ 91-93.) |
| III | Fraud | New Chrysler falsely notified the Plaintiffs that it would repair their vehicles free of charge while actually intending to gain access to the |

---

[5]     The Plaintiffs also propose a separate class for members in California.  (*FAC* at ¶ 48.)

[6]     The Plaintiffs voluntarily dismissed Counts IX (Strict Products Liability) and X (Implied Warranty of Merchantability).  (*Notice of Dismissal of Ninth and Tenth Causes of Action in Plaintiff's First Amended Class Action Complaint Without Prejudice Pursuant to FRCP 41(a)(1)(A)(i)*, dated June 16, 2016 (ECF Doc. # 1-42).)

4

|      |                                          |                                                                                                                                                                                                                                       |
|------|------------------------------------------|---------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|      |                                          | vehicles and disable certain features without making actual repairs. (*FAC* at ¶¶ 94-121.)                                                                                                                                            |
| IV   | Fraudulent Concealment                   | New Chrysler actively concealed from the Plaintiffs the disabling effect the N23 Recall software update would have on certain features of their vehicles. (*FAC* at ¶¶ 122-137.)                                                      |
| V    | Negligent Misrepresentation              | New Chrysler unreasonably failed to test the functionality of the N23 Recall software update adequately before representing that the update would repair the Plaintiffs' vehicles. (*FAC* at ¶¶ 138-145.)                             |
| VI   | Promissory Estoppel                      | New Chrysler promised to repair the Plaintiffs' vehicles, which promise the Plaintiffs reasonably relied upon to participate in the N23 Recall, but instead disabled certain features of their vehicles. (*FAC* at ¶¶ 146-155.)       |
| VII  | Unfair and Deceptive Business Practices  | New Chrysler, through ill-gotten gains from the N23 Recall, was able to compete unfairly with other automobile manufacturers and sellers by charging lower prices for its goods and services. (*FAC* at ¶¶ 156-180.)                  |
| VIII | Negligence                               | New Chrysler, as a servicer, owed and breached its duty to repair the Plaintiffs' vehicles properly. (*FAC* at ¶¶ 181-194.)                                                                                                           |
| XI   | Declaratory and Injunctive Relief        | Plaintiffs seek a judicial declaration that New Chrysler has not adequately fulfilled its recall and other general commitments, and request judicial supervision over the recall process. (*FAC* at ¶¶ 225-231.)                      |

New Chrysler removed the action on April 22, 2016 to the United States District Court for the Central District of California, (*Notice of Removal*), and moved to dismiss the case, (*FCA US LLC's Notice of Motion and Motion to Dismiss Plaintiffs' First Amended Class Action Complaint; Memorandum of Points and Authorities in Support*, dated May 27, 2016 (ECF Doc. # 1-33)), or alternatively, transfer the case to the United States District Court for the Southern District of New York for reference to this Court. (*FCA US LLC's Notice of Motion and Motion to Transfer; Memorandum of Points and Authorities in Support*, dated May 27, 2016 (ECF Doc. # 1-36).) The California District

Court denied the motion to dismiss without prejudice, and granted the motion to transfer for the limited purpose of interpreting the *Sale Order*. (*Order Granting Motion to Transfer*, at 4 (ECF Doc. # 1-50)). It observed that neither party had cited any authority regarding whether the limitations on liability in the *Sale Order* applied to "a civil suit for liability stemming from actions taken in response to recall obligations of parts and vehicles manufactured prior to the bankruptcy." (*Id.* at 7.) Following the transfer to the United States District Court for the Southern District of New York, the matter was referred to this Court pursuant the *Amended Standing Order of Reference*, 12 Misc. 00032 (S.D.N.Y. Jan. 31, 2012).

New Chrysler filed the *Motion* in this Court on November 18, 2016 to dismiss the *FAC*. The crux of New Chrysler's argument is that the Plaintiffs' claims are premised on the existence of a pre-Sale manufacturing defect, and are therefore barred by the *Sale Order*. Either New Chrysler did not have a duty to fix the defect, or if it did, it fulfilled that. (*FCA Brief* at 10-13.) New Chrysler claims that its sole responsibility was to comply with 49 U.S.C. §§ 30116 - 30120 of the National Traffic and Motor Vehicle Safety Act ("NTMVSA") as enforced by the National Highway Traffic Safety Administration ("NHTSA"), and according to New Chrysler, the Plaintiffs do not dispute its compliance. (*FCA Brief* at 1-2, 11, 14.)

In response, the Plaintiffs acknowledge the possible existence of a manufacturing defect in the Vehicles, but deny that the manufacturing defect is a precondition to their claims. (*Plaintiffs Lynn Grimstad and Mara Manuel's Opposition to Defendant FCA US, LLC's Motion to Dismiss Plaintiffs' First Amended Complaint & Objection to the Declaration of James Bielenda and Facts In Motion Not In Evidence; Declaration of*

6

*Sedoo Manu, Esq.*, dated Dec. 22, 2016 ("*Plaintiffs' Brief*"), at 12 (ECF Doc. # 13).) Instead, their claims are solely based on New Chrysler's independent tortious conduct—not on any regulatory violations or assumed obligations to fix the Vehicles—and would stand irrespective of any manufacturing defect. (*Plaintiffs' Brief* at 6, 11-13.) They argue that New Chrysler's fault lies not in its failure to fix a purported pre-existing defect, but in its disabling of features during the recall that were previously functioning in the Vehicles. (*Plaintiffs' Brief* at 5.) The recall post-dated the Sale, and the limitations on New Chrysler's liability in the *Sale Order* and the MTA do not bar the resulting tort claims alleged in the *FAC*. (*Plaintiffs' Brief* at 12-16.)

New Chrysler filed a reply reiterating its position that the Plaintiffs' claims are inextricably intertwined with and necessarily premised on a manufacturing defect. (*FCA US LLC's Reply In Support of Its Motion to Dismiss Plaintiffs' First Amended Complaint*, dated Jan. 17, 2017 ("*FCA Reply*") (ECF Doc. # 14).) New Chrysler emphasizes that it only conducted the N23 Recall pursuant to its obligations to the NHTSA, and did not undertake any additional duties that would establish an independent relationship with the Plaintiffs. (*FCA Reply* at 4-5.) Consequently, to the extent the Plaintiffs are dissatisfied with the N23 Recall, New Chrysler contends that their recourse is limited to lodging complaints with the NHTSA. (*FCA Reply* at 5.)

## DISCUSSION

### A.    Standards Governing the Motion

To state a legally sufficient claim, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted); *accord Bell Atl. Corp. v.*

7

*Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *accord Twombly*, 550 U.S. at 556. In deciding the motion, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). A complaint is deemed to include any written instrument attached to it as an exhibit, documents incorporated in it by reference, and other documents "integral" to the complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) (quotations and citations omitted); *accord Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991), *cert. denied*, 503 U.S. 960 (1992).[7]

## B.     The Limits on New Chrysler's Liability

The Court has previously examined the Sale at length and the extent to which New Chrysler assumed the liabilities of Old Carco notwithstanding the "free and clear" and "no successor liability" provisions in the *Sale Order*. *E.g., Burton v. Chrysler Group, LLC* (*In re Old Carco LLC*), 492 B.R. 392, 396-98 (Bankr. S.D.N.Y. 2013)

---

[7] New Chrysler appended a declaration as evidentiary support for certain factual assertions made in the *Motion*. (*Declaration of James Bielenda in Support of FCA US LLC's Motion to Dismiss Plaintiffs' First Amended Complaint*, dated Nov. 14, 2016 ("*Bielenda Declaration*") (ECF Doc. # 12-2).) The Court will not consider the *Bielenda Declaration* in light of the rules that govern the determination of the *Motion*.

8

("*Burton*"); *Ricks v. New Chrysler Group LLC* (*In re Old Carco LLC*), Adv. Pro. No. 12–09801 (SMB), 2013 WL 1856330, at *2-4 (Bankr. S.D.N.Y. May 2, 2013). Except for the Assumed Liabilities under the MTA, and subject to certain additional limitations, New Chrysler assumed Old Carco's existing obligations and liabilities in three situations: (1) the repair obligations imposed under the factory warranty and any extended warranties; (2) products liability arising from "accidents"; and (3) liabilities under federal and state lemon laws. *Burton*, 492 B.R. at 396-97.

In addition, New Chrysler acknowledged its obligation to comply with the NTMVSA. (*Sale Order* at ¶ EE.) In particular, it

> agreed to assume as Assumed Liabilities under the Purchase Agreement and this Sale Order the Debtors' notification, remedy and other obligations under 49 U.S.C. §§ 30116 through 30120 of the NTMVSA relating to vehicles manufactured by the Debtors prior to the Closing Date that have a defect related to motor vehicle safety or do not to comply with applicable motor vehicle safety standards prescribed under the NTMVSA. The Purchaser shall not otherwise be liable for any failure by the Debtors to comply with the provisions of the NTMVSA.

(*Id.*)

Paragraph EE referred to Old Carco's recall obligations under the NTMVSA. The referenced statutory provisions require New Chrysler, *inter alia*, to notify owners of Chrysler vehicles that "the vehicle or equipment contains a defect related to motor vehicle safety or does not comply with an applicable motor vehicle safety standard prescribed under this chapter," 49 U.S.C. § 30118(a); *see* §§ 30118(c), 30119, and remedy the defect or noncompliance by repairing the defect, replacing the vehicle with a comparable vehicle, or refunding an appropriate portion of the purchase price, leaving the choice of the appropriate remedy to New Chrysler. 49 U.S.C. § 30120(a).

At the outset, the duty to repair the defective FDCM was not an Assumed Liability under the MTA, or within the three exceptions in the *Sale Order* noted earlier. The Plaintiffs have not relied on any factory or extended warranties, their claims do not arise from "accidents" within the meaning of the *Sale Order*, and they have not asserted lemon law claims. To the contrary, they contend that their vehicles worked well until New Chrysler executed the N23 Recall. (*See Plaintiffs' Brief* at 5 ("Let it be perfectly clear, that Plaintiffs and virtually 99.999% of Jeep owners did not ever have any roll-away issues with their fully functional Jeeps prior to the N23 Recall.").) Accordingly, they cannot recover from New Chrysler for any defects in their vehicles that existed prior to the Sale, or compel New Chrysler to fix those defects. The only relevant obligations New Chrysler assumed with respect to the pre-existing defect was the duty to remedy the safety defect or noncompliant condition in accordance with the NTMVSA.

Although, the Plaintiffs attempt to draw a bright line between claims based on a pre-existing manufacturing defect that are barred by the *Sale Order* and post-Sale claims arising from the N23 Recall that they say are not, their pleadings fudge the distinction. The Plaintiffs repeatedly charge that New Chrysler failed to repair a pre-existing defect that made the computer software susceptible to fracturing. The *FAC* alleges in several places that "[r]ather than replace the affected hardware in the FDCM, or replace the FDCM model itself with a revised model, Defendant opted for a relatively inexpensive option, and it designed, developed, and implemented a software update to upload to the existing, fracture prone, FDCMs." (*FAC* at ¶ 25; *accord* ¶¶ 99, 158.) And the third sentence in their brief sums up their claim in a similar way:

> Plaintiffs allege that Defendant recalled class vehicles, and knowingly performed a software patch to disable their four wheel low/lock and

>>transfer case neutral capability, *rather than correct a physical susceptibility to fractures in their computers* (which could cause an inadvertent roll-away condition).

(*Plaintiffs' Brief* at 1 (emphasis added).)

To be clear, New Chrysler did not assume an obligation under the *Sale Order* to "replace the FDCM model itself with a revised model," "correct a physical susceptibility to fractures in their computers," or more generally, fix the defect, and any such claim is barred by the *Sale Order*. Instead, New Chrysler assumed obligations under the NTMVSA to remedy safety defects and noncompliant conditions within the purview of that law, and the method of remedying the defect – repair, replace or refund – was within New Chrysler's sole discretion. The NTMSVA, in this regard, does not give rise to a private right of action. *Handy v. General Motors Corp.*, 518 F.2d 786, 788 (9th Cir. 1975) ("Congress did not intend to create private rights of action in favor of individual purchasers of motor vehicles when it adopted the comprehensive system of regulation to be administered by the NHTSA."); *Rosen v. J.M. Auto Inc.*, No. 07-61234-CIV, 2008 WL 9901501, at *2 (S.D. Fla. Mar. 6, 2008) ("[T]here is no private right of action under the Safety Act."); *Tires Prods. Liab. Litig. v. Bridgestone/Firestone, Inc. (In re Bridgestone/Firestone, Inc.)*, 256 F. Supp. 2d 884, 900 (S.D. Ind. 2003) ("[E]very court addressing this issue has held that the Safety Act does not provide a private right of action."). If New Chrysler satisfied its obligations under the NTMVSA, and undertook no other duties post-Sale, it is not liable to the putative class for the defective FDCM installed by Old Carco.

This does not, however, automatically exonerate New Chrysler from all of the possible consequences of the recall work. For example, if New Chrysler dented,

11

scratched or damaged a Vehicle in the course of the recall, the NTMSVA does not, I would think, protect it from liability. Here, the thrust of the Plaintiffs' claim is that New Chrysler created a new defect when it disabled the four-wheel drive capabilities of their Vehicles in order to remedy the pre-existing safety defect. The disabling act occurred post-Sale. Furthermore, New Chrysler represented in the *Recall Notice* that it would "repair the vehicle." As a result, the owners delivered the Vehicles to New Chrysler to perform the recall work. Whether the "repair" in the *Recall Notice* referred simply to remedying the safety defect identified therein or implied that the Vehicle would thereafter function as originally intended without the dangerous inadvertent shift to neutral is unclear.

The parties have not addressed whether the disabling of the four-wheel drive capability during the recall as alleged by the Plaintiffs gave rise to an independent claim under non-bankruptcy law, or is barred by the NTMSVA. Moreover, such a question is beyond the scope of the transfer order. I do not mean to suggest that such a claim is cognizable, or that the Plaintiffs, as opposed to the Secretary of Transportation, would have a right to assert it. Rather, I conclude that such a claim, if it exists, is not barred by the *Sale Order* because the duty, if any, its breach and the resulting damage would have arisen as a result of post-Sale conduct.

Accordingly, the *FAC* is dismissed to the extent that it alleges that New Chrysler failed to fix a pre-Sale defect in the Vehicles, but is otherwise denied without prejudice to the parties' respective rights to raise the issues discussed above. Because the answers to these questions do not implicate the *Sale Order* or the Old Carco bankruptcy, I respectfully defer their resolution to the transferor court.

Settle order on notice consistent with this opinion which includes a provision remanding the civil action to the transferor court.

Dated: New York, New York
April 28, 2017

/s/ *Stuart M. Bernstein*
STUART M. BERNSTEIN
United States Bankruptcy Judge